In re FEDERAL SHOPPING WAY, INC., a Washington corporation, Bankrupt.

Thomas L. McQUAID, Trustee in Bankruptcy of Federal Shopping Way, Inc., Plaintiff,

v.

OWNERS OF "N. W. 20" REAL ESTATE by the Executive Committee of the N. W. 20 Owners Conference consisting of Harriet E. Berg, Alice M. Beyer, David Freeman, George Halvor, Herman Mayer, Allen M. Ottelle, Irma Rader, and Margaret Singleton, Defendants.

Andrew C. Cratsenberg and Luetta M. Cratsenberg, his wife; Andrew C. Cratsenberg as Trustee for Andrew C. Cratsenberg, Jr., and Larry S. Cratsenberg, under Trust Agreement dated March 29, 1977; Banker's Mortgage Corporation; FBS Financial Inc., a Delaware corporation; and Edward W. Kuhrau, as Trustee for FBS Financial, Inc., under Deed of Trust dated October 12, 1979, Plaintiffs in Intervention.

Bankruptcy No. 61609.

United States Bankruptcy Court, W. D. Washington, at Seattle.

March 29, 1982.

Eric E. Richter and John A. Roberts of Skeel, Henke, Evenson & Roberts, Seattle, Wash., for plaintiffs in intervention.

Lisle R. Guernsey of Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for plaintiffs.

James B. Street of Schweppe, Doolittle, Krug, Tausend, & Beezer, Seattle, Wash., for defendants.

MEMORANDUM RE GRANTING OF PERMANENT INJUNCTION

SIDNEY C. VOLINN, Bankruptcy Judge.

I.

On December 16, 1980, this court granted the motion of the plaintiffs in intervention (intervenors) for a preliminary injunction and denied the defendants' motion for dismissal of the Complaint in Intervention. This order was appealed. On April 8, 1981, the District Court entered its Order Affirming the Order of the Bankruptcy Court entered on December 16, 1980. The District Court stated:

The issue certified on appeal is: Whether the Bankruptcy Court had jurisdiction under 28 U.S.C. § 2283 to issue said injunction.

28 U.S.C. § 2283 prohibits Federal courts from enjoining state court proceedings except "as expressly authorized by Act of Congress, or when necessary in aid of its jurisdiction or to protect or effectuate its judgments."

As indicated, the Order affirming the Bankruptcy Court was entered by the District Court on April 8, 1981. That order is

presently on appeal to the Ninth Circuit Court of Appeals.

While the Order of December 16, 1980, is a preliminary injunction, treatment by the District Court on appeal of the issue did not differentiate as to its temporary or permanent nature. Likewise, the approach of the parties on appeal to the United States Court of Appeals for the Ninth Circuit makes no such distinction. Defendants, in the statement of the case in their brief on appeal to the Ninth Circuit, at page 1, state:

"The central legal issue raised is the applicability of the Federal anti-injunction statute, 28 U.S.C. § 2283, to the circumstances of this case. Under 28 U.S.C. § 2283 the burden is on the intervenor plaintiffs/appellees to show that the injunction against appellants' state court proceedings was *necessary to effectuate prior Bankruptcy Court orders.*" (Emphasis supplied)

This bankruptcy proceedings was commenced on November 13, 1967, by the filing of an involuntary petition. The debtor became involved with some 60 subsidiary or cooperating companies, one of which was a group of owners of fractionalized interests in real estate known as the N. W. 20 (acres) or Recreplex. In general, this has been a complex long-term proceeding accompanied by litigation of a protracted and varied nature.

The interests in Recreplex were purportedly conveyed or transferred in the form of documents which appear to be earnest money agreements and real estate contracts for the conveyance of undivided interests in property. Forms of these documents are attached to the Pretrial Order. These documents were never recorded nor fulfillment deeds ever executed or delivered by the debtor.

## II.

During the course of the bankruptcy proceedings, and on November 6, 1970, the court entered an "Order Prescribing Procedure for Allowance and Disallowance of Claims and Interests". This order provided in detail a procedure for the giving of notice to claimants and requiring that claims be filed. The order provided that "every claim recommended by the trustee for allowance shall be deemed allowed unless an objection thereto is filed..."

On May 3, 1972, after hearings on the notice, the court entered an order adjudicating the debtor a bankrupt and directing that bankruptcy be proceeded with. This order provided that:

ORDERED that, insofar as is conformable with the Bankruptcy Act, all claims on file herein are regarded as claims in the bankruptcy proceeding without the necessity of refiling....

Ordered that pursuant to § 238 of the Bankruptcy Act, the proceedings shall hereafter be conducted insofar as possible, in the same manner and with like effect as if an involuntary petition for adjudication had been filed on November 13, 1967, and a decree of adjudication had been entered January 22, 1969; and it is further

Ordered that the entire record, pleadings, transcripts, and exhibits filed in this cause be continued and incorporated into and become a part of the bankruptcy proceeding for the purpose of avoiding duplication of hearings and the record insofar as may be possible....

*Order Adjudging Debtor Bankrupt and Directing that Bankruptcy Be Proceeded With*, Cause No. 61609, entered May 3, 1972 (Ex. I, 10)

The court followed, pursuant to the foregoing order, the claims procedure previously authorized. It did so particularly in considering the class claim of the Recreplex holders which had been filed in this proceeding. Pursuant thereto, on August 25, 1980, it entered an order disallowing this class claim entitled "Order Disallowing Claim No. 2541". This order provided that the principal amounts of all payments which had been made by the Recreplex contract holders were allowed as general unsecured claims. A similar order on other grounds allowing all filed claims on a gen-

eral unsecured basis had been entered December 12, 1979 (Ex. I, 16) after notice to all claimants.

There are 1478 Recreplex purchasers. Of them 1032 had filed proofs of claim in this proceeding. 446 did not do so. A class claim was filed for them by counsel for the Amman class in *Amman v. Cissna*. 1246 are in the plaintiff class, 232 having opted out. However, in terms of dollar amount, those who have filed claims total $1,797,-145.33. As to the 446 who did not file claims in bankruptcy, these total $332,-715.15. The total of the claimants is $2,182,087.02. Thus, the overwhelming number of Recreplex units sold involved claimants who filed claims with the Bankruptcy Court.

### III.

On April 18, 1975, the court ordered the sale of the Recreplex property to intervenors' predecessor, Bankers Mortgage Company. Because of the litigation involving the property, the trustee requested, and the court granted, an order authorizing sale subject to the institution of appropriate proceedings which would adjudicate title to the property.

In 1978 the earnest money was due to expire. The trustee applied to the court for authorization to sell the property (quoting from p. 7, 1.10) "A plenary adjudication of title if that became possible, of title claims other than that of the Cissna group having been resolved by that time." See Findings of Fact entered March 29, 1978, *supra*, II, 16 and the court's order of March 29, 1978.

The Recreplex purchasers, represented by Cissna, appealed the order modifying order of sale, but failed to stay the sale itself. Hence, the appeal was dismissed.

After the sale and orders noted above which adjudicated that the Recreplex contract claims were unsecured claims, the defendants commenced an action in King County Superior Court against the trustee purporting to constitute "Executive Committee of the N. W. 20 Owners Conference".

The defendants take the position that during the period in which the N. W. 20 was held by the bankruptcy trustee, the question of title to the property was never adjudicated by the Bankruptcy Court; that since the trustee is no longer in possession of the property, he is not in a position to deal with this issue and therefore, defendants may litigate the issue of title with the intervenors in state court.

### IV.

The trustee, throughout the proceedings, has asserted his title to the Recreplex property and invoked the court's jurisdiction with respect thereto. The Pretrial Order, in its admitted facts, states various instances. Paragraph 16 refers to the trustee leasing improvements in the property in 1970. Paragraph 18 refers to the court's orders in 1975 and in 1978 authorizing sale by the trustee of the Recreplex property, free and clear of liens and encumbrances, such claims to be transferred to the proceeds of sale, pending determination thereof by the Bankruptcy Court. The orders further provided for this court's continuing jurisdiction of the proceedings relating to the sale. The court's continuing jurisdiction over such claims of interest in the property was thereby established. Paragraph 25 refers to a class action by Recreplex holders wherein part of the relief sought was vesting of title in the property in the Recreplex holders. On April 5, 1972, the District Court vested jurisdiction in the Bankruptcy Court to consider issues relating to such ownership of the property.

During the course of the bankruptcy proceeding, the trustee dealt with and disposed of many claims which would have been superior to the rights of the Recreplex holders if they did have title or some interest in the real estate; for example, a lien or mortgage creditor such as Nellie Fleming and the Statutory Receiver of Federal Old Line Insurance Company and King County which was owed substantial sums for taxes.

### V.

Sales free and clear of liens with transfer of such claims of interest to the proceeds of

such sale for later adjudication by the Bankruptcy Court are common to bankruptcy. Failing such a procedure, sales of property involving conflicting claims, a frequent problem with bankruptcy property, would be deferred pending resolution, with resultant loss of equity for parties in interest.

Thus, in this case, the court ordered the sale free and clear of claims in the property, and *retained jurisdiction* to rule on the validity and relative priority of these claims. It would not have been possible to do otherwise. No buyer could have been expected, in effect, to take a quit-claim or limited warranty deed to the property and face a fragmented world of claimants in whatever courts such claimants might choose. It would be illogical and improvident for the parties to such a sale to detach title issues from the jurisdiction of the court. Thus the adjudication by this court of the Recreplex claims logically followed the sale. The jurisdiction conceded to exist while the trustee retained the property was reserved and continues to exist in order that the court may define the rights of the parties with respect to their interests in the property.

The reservation of jurisdiction applied to those who claimed an interest in the property. This included the Recreplex holders who were parties to the orders authorizing sale. Their objections thereto were overruled. As stated, their interests have been found to be those of unsecured creditors. They now seek to relitigate these issues. In the light of this continuing jurisdiction, as the District Court stated in affirming the previous order of this court,

> It would be anomalous indeed for this court to hold that the Bankruptcy Court does not have the authority to clarify the actions that *it* took in reference to a sale of estate property. (Emph. supp.).

Defendants, by instituting the quiet title action in state court, are calling upon that forum to enter rulings which would contravene or nullify numerous actions of this court, particularly the ruling of this court holding that the Recreplex holders are unsecured claimants having no interest by way of ownership or title in the real estate.

Such a ruling would unravel other holdings or rulings of the Bankruptcy Court or the District Court relating to the holders of the Recreplex interests or the property itself with a consequent destabilizing effect on the past course of these proceedings and the rights of many parties as developed through past actions and orders of this court.

It is clear that the Bankruptcy Court had jurisdiction over the N. W. 20 and that in ordering sale thereof, it retained jurisdiction to adjudicate claims with respect thereto. The court's ruling as to the Recreplex claims necessarily holds that they have no interest in the property and implicitly precludes them from relitigating this issue. Their action is calculated to subvert the jurisdiction of the Bankruptcy Court and its rulings as to the nature of their claims. The preliminary injunction should therefore be made permanent.